***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn with modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All *Page 2 
the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employment relationship existed between Plaintiff and Employer-Defendant at all relevant times herein. Employee was employed at the same facility in Bessemer City from March 18, 1962 until his termination date of January 31, 1998. The facility was owned by Lithium Corporation of America from May 28, 1969 until 1985. In 1985 the assets of Lithium Corporation of America were sold to FMC-Lithium Corporation pursuant to a bulk bill of sale. FMC-Lithium Corporation changed its name and eventually merged into FMC Corporation in 1990. The facility was owned by FMC Corporation from 1990 until the Employee's last day of employment.
3. The carriers on risk for the aforesaid employers during the period of employee's employment were as follows: Aetna Casualty from November 1, 1969 until April 15, 1972; Fidelity Casualty/Pacific Insurance Co./Continental Insurance Co. (CNA) from April 15, 1974 until April 14, 1980; Northwestern National from April 15, 1980 until April 15, 1985; National Union Fire Insurance Company from October 1, 1984 until October 1, 1992; and Insurance Company of the State of Pennsylvania from October 1, 1992 until December 31, 1998.
4. Prior to the hearing before the deputy commissioner, Plaintiff entered into a Compromise Settlement Agreement with Carrier-Defendants Fidelity Casualty/Pacific Insurance Company/Continental Insurance Company on August 15, 2008 for $3,000.00 and The Travelers for $3,000.00.
5. Another asbestos case against FMC was handled by the same counsel, Hamrick vs. FMC, I.C. No. 394796. The parties stipulated that all of the evidence from the Hamrick case *Page 3 
would apply in this claim. Furthermore, another case against FMC, Sellers v. FMC, I.C. No. 302558, was tried at the same time as the present case. The parties stipulated that all evidence in theSellers case would apply in the case at hand.
6. The following exhibits were admitted into evidence at the hearing:
 (A) stipulation #1, which consist of IC forms, medical records, discovery responses, etc.;
 (B) plaintiff's #1, Charlotte Lung and Health Center records.
7. The issues to be determined from this hearing are as follows:
 a. Whether plaintiff developed an occupational disease(s) as a result of his employment with defendant-employer?
 b. If so, to what, if any benefits is plaintiff entitled to recover under the North Carolina Workers' Compensation Act?
 c. When was plaintiff's last injurious exposure?
 d. Whether plaintiff is disabled as a result of any occupational disease he developed as a result of his employment with defendant-employer?
 e. What is plaintiff's average weekly wage?
 f. If there is any compensation due plaintiff, whether it should be increased by ten percent pursuant to N.C. Gen. Stat. § 97-12?
 g. Whether plaintiff is entitled to any attorney's fees for the unreasonable defense of this matter?
 h. Whether plaintiff's claim should be barred by the statute of limitations?
 *********** *Page 4 
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set forth herein.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer from 1962 until 1998. As of the date of hearing before the deputy commissioner, plaintiff was 69 years old and no longer working. Plaintiff's last job was with defendant-employer. While plaintiff worked with defendant-employer he worked in a plant that made lithium products.
2. Plaintiff left his employment with defendant in January 1998 based upon an early retirement package offered by the employer. He had previously left the plant on short term disability because of blood pressure issues.
3. Plaintiff was initially hired as a laborer, performing various jobs around the entire plant. Plaintiff worked in the laborer position for approximately 12 years, until about 1974, and in this position his work included operating machinery that made different chemicals.
4. The vast majority of his time as a laborer was spent dipping cells. A cell is a tank that extracts metal from the chemicals. Once the vat or tank is filled with various metals, the lithium metal floats on top. Plaintiff took a skimmer and removed the metal. Plaintiff worked on the cells for most of the time during the 12 years he was a laborer.
5. The cells were insulated with insulation that contained asbestos. Quite often, Plaintiff was around the insulation on the metal cells and he actually insulated the cells himself. In order to make the insulation, plaintiff would pour vermiculite powder from a bag and mix it *Page 5 
with water. As plaintiff was pouring it from the bag, dust from the powder would get on plaintiff and the floor and he had to clean it up. The cleaning process created more dust. Plaintiff would breathe this dust into his lungs.
6. While working on the cells, plaintiff used asbestos lined aluminized coats and asbestos gloves to dip the cells. These were used due to the high temperatures in and around the cells. The coats and gloves were dusty and the asbestos fibers in the gloves and coats got on his skin causing plaintiff's skin to itch. The company changed over to non-asbestos coats and gloves sometime in the eighties or nineties.
7. In 1974, Plaintiff became a supervisor. He had an office but spent most of his time out in the plant where he monitored and supervised ten to forty employees. He was a hands on supervisor. He continued to work on the machinery and around insulation. Plaintiff stayed in this job until about 1992.
8. Plaintiff worked around various vessels and tanks. The old crystallizer or chloride crystallizer was a large tank that plaintiff worked around from 1974 to 1992. According to abatement records and the plaintiff, the crystallizer was insulated with materials containing asbestos. He was around and in contact with the insulation on the crystallizer about once a month.
9. Plaintiff worked around the bromide spray dryer and hypo spray dryer, which was an evaporator. It was insulated with a material that contained asbestos. The insulation around the dryer was damaged and deteriorated. The last time plaintiff worked on it was in the early nineties.
10. While a supervisor, plaintiff went into the boiler room once a day for a minimum of ten to fifteen minutes. The boiler was insulated and the insulation contained asbestos and was *Page 6 
in pretty bad shape. The last time he was in the boiler room was in the mid nineties.
11. While a supervisor, plaintiff's main responsibility was the main chemical building which contained Area 1 and Area 2. There was asbestos insulation used throughout the main chemical building and the majority of it was in the form of steam line insulation. Steam lines ran everywhere in the facility. They were overhead and came down to the equipment and tanks. Plaintiff helped insulate some of the pipes both while he was a laborer and a supervisor.
12. Plaintiff was exposed to asbestos throughout his career with defendant-employer and this continued up until his last day of employment.
13. Plaintiff was never warned about asbestos or trained to handle it.
14. In addition to the asbestos at the facility, there was also silica used at the plant. In the early part of plaintiff's career he used silica and he used it daily. As a result, he was in the North Carolina Dusty Trades Program. He worked with silica in the Ball Mill area. The greater weight of the evidence establishes that plaintiff was exposed to silica into the nineteen-eighties.
15. In the early nineties, plaintiff began having physical problems. He had high blood pressure and shortness of breath. He went on short term disability for approximately six months due to the high blood pressure. Plaintiff returned to work for defendant-employer and shortly thereafter took early retirement.
16. In 2006, plaintiff had chest x-rays performed and was diagnosed with asbestosis and silicosis. Plaintiff was seen by Dr. Jill Ohar as a result of his condition. Dr. Ohar is a board certified pulmonologist at Wake Forest Baptist Hospital. Dr. Ohar concluded that plaintiff was suffering from asbestosis and silicosis as a result of his employment with defendant-employer. She determined that he had a moderate restrictive lung impairment from the breathing tests to which she attributed to asbestosis and silicosis. Dr. Ohar determined that plaintiff's asbestosis is *Page 7 
disabling and that plaintiff is not capable of engaging in any physical activity or working.
17. Dr. Fred Dula reviewed plaintiff's x-rays and determined that the results were consistent with exposure to asbestos and a diagnosis of asbestosis. Dr. Stephen Proctor opined that plaintiff suffered from disabling restrictive process of the lungs due to asbestosis and silicosis which were caused or contributed to by his employment with defendant-employer.
18. In addition Dr. Selwyn Spangenthal, a board certified pulmonologist, performed an independent medical examination at the request of defendants. Dr. Spangenthal opined that plaintiff suffered from a breathing impairment due to asbestosis. Dr. Spangenthal also opined that plaintiff's employment with defendant-employer caused or contributed to his asbestosis.
19. Defendants failed to file a Form 22. The maximum compensation rate for the year of diagnosis is $730 per week.
20. Plaintiff was evaluated by Stephen Carpenter, a vocational specialist. Mr. Carpenter evaluated plaintiff in light of plaintiff's age, education, work history, and transferable skills and reviewed his medical records. Mr. Carpenter opined that plaintiff is not employable in any type of work due to the deficits found on testing and due to medical findings showing significant loss of function. He further opined that plaintiff is not able to perform his previous job with defendant-employer and that it would be futile for plaintiff to see other employment.
21. The Full Commission finds based upon the greater weight of the credible evidence that Plaintiff suffers from asbestosis and silicosis as a result of his employment with defendant-employer. The Full Commission further finds that plaintiff is permanently and totally disabled as a result of his asbestosis.
 *********** *Page 8 
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The greater weight of the credible evidence shows that plaintiff developed asbestosis as a direct result of his employment with defendant-employer. Plaintiff's last injurious exposure to the hazards of asbestos occurred during his employment with defendant-employer and he was exposed until his last day of employment with defendant-employer. Therefore, FMC is the responsible employer for plaintiff's asbestosis. N.C. Gen. Stat. §§ 97-53(24); 97-53(25).
2. To prove disability under the Act, an injured employee must establish that he is incapable of earning the same wages he earned at the time of contracting the disease or receiving the injury, at his same job or any other employment. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may prove he is incapable after injury of earning the same wages he earned before injury in any other employment in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but has, after a reasonable effort been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, or lack of education, to seek other employment; (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Demery v. Perdue Farms,Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v.Lowe's Production Distribution,108 N.C. App. 762, 425 S.E. 2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then *Page 9 
shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
3. In this case, the greater weight of the evidence establishes that plaintiff is not capable of any work due to his age, education, work history, transferable skills and asbestosis.Id. There is insufficient evidence to show that plaintiff's disability is as a result of his silicosis. Id. Defendant has not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and vocational limitations.Id. Therefore as a result of plaintiff's asbestosis, plaintiff is permanently and totally disabled from any employment and is entitled to receive permanent total disability compensation at a rate of $730.00 per week for the remainder of his life beginning January 30, 2006. N.C. Gen. Stat. § 97-29.
4. Due to the circumstances surrounding plaintiff's time since his employment with defendant-employer, methods one through four for determining the average weekly wage would not be fair. Therefore, considering all the evidence in the case, the most fair average weekly wage is the maximum average weekly wage for the year in which plaintiff was diagnosed with asbestosis. N.C. Gen. Stat. § 97-2(5). Therefore, plaintiff's average weekly wage is $730.00. Id.
5. Defendant-employer was insured during the time period of last exposure to asbestos by the Insurance Company of the State of Pennsylvania. The Insurance Company of the State of Pennsylvania, therefore, is liable for payment of compensation due plaintiff. N.C. Gen. Stat. § 97-57. *Page 10 
6. Plaintiff is entitled to all medical treatment resulting from his contraction of a compensable occupational disease to the extent that such treatment was designed to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Plaintiff is entitled to have defendants pay for the costs of this action including reasonable attorney's fees. N.C. Gen. Stat. § 97-88. The Full Commission finds 25% of the amount due plaintiff to be a reasonable attorneys fee.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees hereinafter approved, defendants shall pay to plaintiff permanent total disability benefits at the rate of $730.00 per week beginning January 30, 2006 and continuing for the remainder of plaintiff's life. All sums that have accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney fee in the amount of 25 percent of the compensation approved and awarded for plaintiff is approved and allowed for plaintiff's counsel. The attorney's fee shall not be deducted from the compensation due plaintiff but paid as a part of the cost of this action. The attorney's fee shall be paid directly to plaintiff's attorney.
4. Defendants shall pay the costs of this action. *Page 11 
This the 16th day of December 2009.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER